IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOAN RICKERT, | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV334 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| MIDLAND LUTHERAN | ) | **AND ORDER** |
| COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Midland Lutheran College's ("Midland") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Filing 15.)

## I.   Background

Plaintiff filed her Complaint in this matter on August 27, 2007. (Filing No. 1.) Defendant filed its Motion to Dismiss on February 1, 2008. (Filing No. 15.) Along with its Motion, Defendant filed a Brief in Support. (Filing No. 16.) On February 26, 2008, Plaintiff filed a Letter, which the court construes as a Brief in Opposition to Defendant's Motion to Dismiss. (Filing No. 17.) On February 28, 2008, Defendant filed a Reply to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss. (Filing No. 18.)

The court has carefully reviewed the documents submitted by both parties and denies Defendant's Motion to Dismiss as set forth in this Memorandum and Order.

## II.   Summary of Complaint

Plaintiff filed her Complaint in this matter on August 27, 2007 against

Midland. (Filing No. 1.) In Plaintiff's Complaint and its attachments, Plaintiff states that Midland hired her in 1997, and that in 2002-2003 she was employed as the half-time Student Activities Director and half-time Head Volleyball Coach. (Filing No. 1 at CM/ECF pp. 2, 12.) In 2003, Plaintiff developed breast cancer. (*Id.* at CM/ECF p. 2.) As a result of this condition, Plaintiff had surgery on July 2, 2003 and started chemotherapy treatments shortly after surgery. (*Id.*) In January 2004, Plaintiff had a second surgery. (*Id.*) Plaintiff states that after her surgery, she had doctor appointments every three months, including a shot during volleyball season to help boost her immune system while undergoing chemotherapy. (*Id.*) Plaintiff asserts that some of these procedures were quite costly. (*Id.*)

In March of 2004, Tara Knudson-Carl became Plaintiff's supervisor. (*Id.* at CM/ECF p. 3.) Plaintiff states that on September 8, 2004, Knudson-Carl dismissed Plaintiff from her part-time Student Activities Director position. (*Id.* at CM/ECF pp. 3, 12.) Plaintiff states that Knudson-Carl terminated Plaintiff as Student Activities Director because Midland had money to hire a full-time employee and Knudson-Carl was not selecting Plaintiff. (*Id.* at CM/ECF p. 12.) This left Plaintiff employed solely as the part-time Head Volleyball Coach.

Plaintiff states that once she became part-time, she attempted to get a meeting with Steve Schneider, Director of Athletics, about her benefits because she continued to have oncology appointments. (*Id.* at CM/ECF pp. 3, 20.) Plaintiff asserts that she was informed that Gene Crume and Steve Schneider were considering Plaintiff for a position overseeing intramurals, which Plaintiff was happy to accept. (*Id.* at CM/ECF pp. 3, 23-24. )

However, discussions concerning this position ended, and she was instructed to work out of her home. (*Id.* at CM/ECF p. 3.) As a result, Plaintiff asserts that she no longer had access to her volleyball players or the other coaches. (*Id.*) Plaintiff contends that because her volleyball players continued to come to the gym to find

Plaintiff, she was given an office in a small house on the opposite side of campus where no other coaches were housed. (*Id.*) At the same time, Plaintiff was informed that her part-time coaching position was becoming full-time, and that Midland was opening the position up for applications. (*Id.* at CM/ECF p. 4.) Plaintiff was not hired for the position. (*Id.* at CM/ECF p. 12.) Plaintiff alleges that Midland hired younger, less-qualified individuals to fill both the Student Activities Director position and the Head Volleyball Coach position. (*Id.* at CM/ECF p. 10.)

Plaintiff claims that she had no problems at Midland before she was diagnosed with cancer. (*Id.* at CM/ECF p. 4.) Plaintiff states that as a result of losing her job, Plaintiff and her husband filed bankruptcy, pushed their credit cards to the limit to pay her medical bills, and have had to pay for COBRA insurance coverage for many months, draining Plaintiff financially. (*Id.*)

Plaintiff filed a Charge of Discrimination with the NEOC on September 27, 2005. (*Id.* at CM/ECF p. 12.) In her charge, Plaintiff asserted claims of age discrimination based on the Nebraska Age Discrimination in Employment Act ("Nebraska Age Act") and the Age Discrimination in Employment Act ("ADEA"), and asserted claims of disability discrimination based on the Americans with Disabilities Act ("ADA") and the Nebraska Fair Employment Practices Act ("NFEPA"). (*Id.*) On March 16, 2007, the NEOC issued a Commission Determination of no reasonable cause. (*Id.* at CM/ECF p. 9.) The EEOC dismissed Plaintiff's charge of discrimination on May 25, 2007. (*Id.* at CM/ECF p. 13.)

### III. *Legal Analysis*

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Liberally construed, Plaintiff's Complaint alleges violations of the ADA, 42 U.S.C. §§ 12101-12213; the NFEPA, Neb. Rev. Stat. §§ 48-1101-48-1125; the ADEA, 29 U.S.C. §§ 621-634; and the Nebraska Age

Discrimination in Employment Act, Neb. Rev. Stat. §§ 48-1001-48-1010.

    A.    <u>Standard of Review</u>

In order to withstand a motion to dismiss, a pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (overruling *Conley v. Gibson,* 355 U.S. 41 (1967), and setting new standard for failure to state a claim upon which relief may be granted). Regardless of whether a plaintiff is represented or appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't. of Corr. & Rehab.*, 294 F.3d 1043, 1043-1044 (8th Cir. 2002) (citations omitted).

"When there are documents attached to the complaint, [the Court] consider[s] this material along with the allegations in the complaint." *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007); Fed. R. Civ. P. 10(c) (stating "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

A motion to dismiss should be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (quotations omitted). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191 (1984). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because

the court doubts that the plaintiff will be able to prove all of the necessary allegations. *Bennett v. Berg*, 685 F.2d 1053, 1057-58 (8th Cir. 1982).

### B. Plaintiff's ADA and NFEPA Claims

Defendant argues that Plaintiff's Complaint should be dismissed because she has failed to state a claim under either the ADA or the NFEPA.

In construing the NFEPA, Nebraska courts have looked to federal decisions because the NFEPA is patterned after the ADA. *See, e.g., IBP, Inc. v. Sands*, 563 N.W.2d 353, 357-59 (Neb. 1997). The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a qualified individual with a disability as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The ADA itself does not define the term "major life activities"; however, EEOC regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 192 (2002).

Liberally construing Plaintiff's Complaint and its attachments, Plaintiff is alleging that soon after she was diagnosed with cancer, Defendant reduced her full-

time job—consisting of the part-time position of Head Volleyball Coach and part-time Student Activities Director—to a part-time position as Head Volleyball Coach because of her breast cancer. Furthermore, Plaintiff alleges that she was not selected as the full-time Head Volleyball Coach because of her breast cancer. Plaintiff further alleges that the Defendant hired less-qualified individuals to fill the full-time Student Activity Director and full-time Head Volleyball Coach positions. Based on the deferential standard with which this court reviews the Plaintiff's pleadings, as set forth in *Bell Atlantic Corp.,* the court finds that Plaintiff has set forth enough facts to nudge her claims across the line from conceivable to plausible.

### C. Plaintiff's ADEA and Nebraska Age Act Claim

Next, Defendant argues that Plaintiff's Complaint should be dismissed because she failed to state a claim of age discrimination under the ADEA or the Nebraska Age Act.

The Nebraska state courts interpret the Nebraska Age Act as requiring the same proof of age discrimination as we require under the ADEA. See *Allen v. AT & T Tech., Inc.*, 423 N.W.2d 424, 431 (Neb. 1988) (noting that "[a]gain, we follow the lead of the federal courts" in evaluating an age discrimination claim). The ADEA makes it unlawful for an employer to take adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a). Age discrimination may be proved by any direct or indirect evidence "'without resort to any special judicially created presumptions or inferences related to the evidence.'" *Perry v. Kunz,* 878 F.2d 1056, 1058-59 (8th Cir. 1989) (quoting *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 239 (4th Cir.1982)).

---

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973),established a burden-shifting framework for evaluating claims of discrimination when the plaintiff is relying on indirect evidence of discrimination. Under this framework, a plaintiff

must first establish a prima facie case of discrimination, which creates a rebuttable presumption of a statutory violation, and shifts the burden of production to the employer. *Id.* The employer must rebut this presumption by producing a legitimate, non-discriminatory reason for its actions. *Id.* When it does so, the presumption disappears. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Liberally construing Plaintiff's Complaint, and the attachments to Plaintiff's Complaint, Plaintiff is alleging that she is 47 years old and was terminated from her position as half-time Volleyball Coach and half-time Student Activities Director because of her age. Furthermore, Plaintiff alleges that Defendant hired younger, less-qualified individuals to replace Plaintiff in the full-time Student Activities Director and full-time Head Volleyball Coach positions. Again, based on the deferential standard with which this court reviews the Plaintiff's pleadings, as set forth in *Bell Atlantic Corp.*, the court finds that Plaintiff has set forth enough facts to nudge her claims across the line from conceivable to plausible.

### D. Timeliness of Complaint

Finally, Defendant argues that Plaintiff's Complaint should be dismissed because it was not filed within 90 days of receiving notice of the NEOC's and EEOC's dismissal of Plaintiff's charges. The ADEA and the ADA both require exhaustion of administrative remedies and require that suit must be filed within 90 days of *receiving* notice of final agency action. *See, e.g.*, 29 C.F.R. § 1614.407(a); *Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 589 (8th Cir. 2003); *Greer v. Emerson Elec. Co.*, 185 F.3d 917, 922 n.10 (8th Cir. 1999).

Furthermore, the NFEPA provides that the "deadline for filing an action directly in the district court is ninety days after the complainant *receives* notice of the last action the commission will take on the complaint or charge." Neb. Rev. Stat. § 48-1120.01 (emphasis added). The statute goes on to state that, "[t]he last action on

the complaint or charge includes the issuance of the final order after hearing, the determination of reasonable cause or no reasonable cause, and any other administrative action which ends the commission's involvement with the complaint or charge." *Id.*

In this case, the final agency action taken on Plaintiff's charge was the Dismissal and Notice of Rights mailed to Plaintiff by the EEOC on May 25, 2007. (Filing No. 1 at CM/ECF p. 13.) There is no evidence in the pleadings or Plaintiff's response (or for that matter in the Defendant's Motion to Dismiss) as to when Plaintiff actually received the EEOC's May 25, 2007 decision. But Plaintiff filed this action on August 27, 2007, 94 days after the EEOC mailed its Dismissal and Notice of Rights to Plaintiff. It is reasonable to assume that Plaintiff did not receive the Dismissal and Notice of Rights until May 29, 2007, four days after it was mailed to Plaintiff by the EEOC. Therefore, Defendant's Motion to Dismiss based on its objection to the timeliness of Plaintiff's Complaint is denied.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (filing no. 15) is denied without prejudice to reassertion pursuant to Federal Rule of Civil Procedure 56 as set forth in this Memorandum and Order.

June 18, 2008.                    BY THE COURT:

                                          s/ *Richard G. Kopf*
                                          United States District Judge